Our next case for today is 2020 10093 Franciscan Alliance et al. versus Norris Cochran, acting secretary et al. versus American Civil Liberties Union of Texas River City Gender Alliance intervenors. Mr. Davis, you may proceed. Thank you, Your Honor, and may it please the Court. In at least 20 contraceptive mandate cases in jurisdictions around the country, courts have already considered the proper remedy for when HHS violates RFRA by trying to force religious people to pay for objectionable medical services. In those cases, the answer has been uniform. The courts have entered an injunction. Moreover, in every single one of the 20 cases collected in our brief, the injunctions themselves have been uniform. They've been plaintiff-specific injunctions, and they've stopped HHS from applying not only its own regulations but also the underlying statute to impose the challenge requirement. That's exactly the relief that plaintiffs are seeking here with respect to HHS's radical attempt to require them not only to pay for but also to perform gender transitions and abortions contrary to their religious beliefs and their medical judgment. Counsel, can I back up and ask you maybe just a very elementary question that maybe the answer should be obvious, but it's lost on me. Are we still talking about the 2016 rule, the rule that was subsequent to that, that I think existed at the time the appeal was taken? And then, of course, we got your 28J with the proposition of yet another change in the rule. Can you tell us which one we're talking about here? Maybe we're talking about all three. Your Honor, I think that's a very helpful question. And what we're talking about is the government's action trying to apply Section 1557 to require these plaintiffs to perform these procedures or else risk the massive financial penalties that can come under Section 1557. So the relief we're seeking is aimed at that burden, and that's consistent with RFRA. So the object of a RFRA case is about the burden on religion. And so the proper remedy— That's not all three, basically, at this point. Your Honor, that's right, Your Honor. We're talking about action under Section 1557. And that puts us— Counselor, but you're also talking about still the 2016 regulation, aren't you? Because the Whitman, the Walker-Whitman case has said that the sex stereotyping includes the proposition for which Judge O'Connor had lined through. But they said now that that proposition includes the point. And so it kind of moots out the relief that Judge O'Connor gave, doesn't it? I think that's right, Your Honor. As we sit here today, we've got two other district courts, the Whitman-Walker case, the Whitman-Walker court in D.C., the Walker court in New York, that have actually brought back provisions of the 2016 rule that impose upon plaintiffs the very substantial burden that Judge O'Connor held to violate RFRA, correctly held to violate RFRA. So we don't have to decide, do we, whether we're dealing with the 2020 rule or even 1557 if it's still dealing with the 2016 rule, do we? I think it's true, Your Honor, that the 2016 rule still imposes the burden and we still need additional relief. And I think it's exactly right that to the extent that Judge O'Connor's opinion was premised on the idea that vacater is enough. I mean, subsequent events have shown that vacater is not enough. And why could you have just gone back to Judge O'Connor because he specifically said, why isn't appeal the right vehicle given that he specifically said, if you need further relief or something changes, come back to me or whatever the language specifically was? Well, Your Honor, I think his come back to me language was more about the 2016 rule. Whereas, again, what we're seeking here is the same relief that the plaintiff's got in the contraceptive mandate cases, the same relief that the plaintiff's got in the Sisters of Mercy case just a couple weeks ago, which is relief that's aimed at the burden. But he doesn't have to give that relief, does he? I mean, are you saying that it's abuse of discretion not to give that relief? So, Your Honor, I think the opulent life church opinion is really helpful here, where Judge Elrod explained for this court that it was abuse of discretion in that case for the district court to refuse to enter an injunction on irreparable harm grounds because the court said that a RIFRA violation or a RLUIPA violation is itself irreparable harm. So, I think, and that reasoning has been, that's in Judge McConnell's opinion in the Ocentro case, that's in Judge Sykes' opinion in the Corte versus Sebelius case here. And I think it's important in the Corte versus Sebelius case for the Seventh Circuit, excuse me. I think it's important to note that we're not just talking about the 20 contraceptive mandate injunctions, which are precisely analogous to this case. Plaintiffs are actually unaware of any other case in any jurisdiction in the whole history of RIFRA in which a court has found a prospective RIFRA violation, but then nonetheless refused to enter an injunction. And neither HHS nor ACLU here has been able to muster a single counterexample of their own. Hey, just a quick question. So, your brief cites all these RIFRA cases that resulted in injunctions, but did any of those cases also involve APA claims? No, they didn't, Your Honor, but I think there's a lot of cases there, but I'm not off the top of my head aware of any that did. But I think that gets... I guess my question is, in how many cases has the District Court done what you're seeking here, which is vacate a rule under the APA and issue a permanent injunction against a RIFRA violation? So, I think here it's helpful for the Court to look at the Department of Commerce case, which is a post-Monsanto decision. And the Department of Commerce case, it's not a RIFRA case, but there the Court says it distinguishes the Monsanto case that Judge O'Connor relied on here, and it does so precisely on the ground that vacater alone wouldn't actually stop the party to be enjoined, which there was a federal agency, from reimposing the challenged action. And this case is squarely in Department of Commerce land. We're talking about the vacater alone doesn't stop HHS from imposing the burden on plaintiff's religious beliefs. It can impose that burden under Section 1557 itself, which doesn't... When you were before Judge O'Connor, did you ask him for anything resembling the specific injunction that you're seeking now? Yes, Your Honor. We asked him in RE-118, in the injunction that we submitted to the Court and asked him to enter for us, it sought this proposed order, correct? But was it in your briefs? Was it in your argument before him, other than in that proposed order? So, Your Honor, it was in the proposed order, and then our briefs made the case that we were entitled to injunctive relief and applied the four injunctive relief factors and went through them all and showed that we met them. And we met them because, again, under Opulent Life Church, once a plaintiff shows a RIFRA violation on the merits, the other injunctive relief factors follow from that, inevitably and as a matter of law. And as a matter of law is the language that the Court used in Opulent Life Church when talking about the holding that a RIFRA violation is itself irreparable harm. And I think it's striking that neither HHS nor ACLU, in their briefs below, took any issue with that part of the injunction that the plaintiff sought. Instead, they took issue only with this question about whether it was appropriate for an injunction to be nationwide or not. Let me ask you this. Would your proposed injunction, would it prohibit HHS from attempting to implement a new rule based on a different record? No, Your Honor. I think that's a great question. This is a strawman argument that we've heard again and again from ACLU and HHS so far in this appeal. The plaintiffs are not trying to strike down future regulations. We're not trying to stop HHS from passing any regulation that it wants. What HHS can't do under the injunction that we're seeking here is apply Section 1557 to these plaintiffs, the plaintiffs that are before the Court, in order to require them to perform or ensure gender transitions or abortions. At what point in the rulemaking process would you attempt to bring HHS back before the District Court? You mean if we got the injunction that we're seeking here, Your Honor? Well, it's kind of a tag-on to my earlier question, in which you were kind of in the process of answering about whether the proposed permanent injunction would bar HHS from implementing or trying to implement a new rule based on a different record. I guess my follow-up was, at what point in that rulemaking process would you attempt to bring HHS back before the District Court? So I think the answer to that question, Your Honor, is that our injunction would stop them from applying this new rule, or Section 1557 itself, or the 2016 rule, whatever the case may be, to impose sanctions on these plaintiffs. So it wouldn't be about trying to stop a rulemaking from going forward. It would be an injunction that says, hey, HHS, whatever your rule is, you can't apply it to these plaintiffs to perform these actions. And again, that puts us right on with the contraceptive mandate injunctions, which had exactly the same structure. They didn't just enjoin the precise regulations that had existed at the time the Obama administration originally enacted the contraceptive mandate. And in fact, those cases actually had a really similar posture to this case in a lot of ways. So there, just like here, the contraceptive mandate originally appeared in Obama-era regulations. But then, just like here, when the mandate was found to violate RFRA, the Trump administration came in and tried to fix it. And then just like- Why shouldn't we just, if we were to agree with you, assuming arguendo, not trying to foreshadow, why wouldn't we just remand for the district court to consider in light of the new circumstances of the other injunctions, if anything needs to be done, rather than dictating an injunction at this point, especially when it's not clear whether the district court specifically rejected your statutory part of the injunction earlier on the statutory basis, or whether it was just because it overlooked it or something like that. We don't know. So why would we not just remand? Your Honor, I think at minimum, the appropriate relief here would be a remand for precisely the reasons that you just discussed. But a remand is simply unnecessary here, and the court could look at the Corte v. Sebelius case, which there, the Seventh Circuit said that once it had found that the legal reason that the district court declined to enter an injunction was wrong, then there was no need to remand for application of the injunction factors, because the injunction factors flow once you found a RFRA violation or a RLUPA violation on the merits. And again, that's opium-like church from this circuit. And they're actually strong- I didn't know that we would be setting up one of those conflicts that we've been reading about in the past few years between different courts and different jurisdictions on these dueling injunctions. Should we be concerned about that in comity and those types of things? No, Your Honor. I think it's a great question. There's a raging debate, obviously, about nationwide injunctions, to what extent they're appropriate, to what extent they lead to dueling obligations on the government. This is a plaintiff specific injunction. There's nothing inconsistent about the relief that plaintiffs are seeking here with the Walker and the Whitman-Walker cases. Those cases are about, what does Section 1557 mean? What rules can HHS pass under it? This case is about, can those rules be applied to these plaintiffs? And the Religious Sisters of Mercy case from the North Dakota District Court just a couple of weeks ago addressed this very comity concern that HHS had raised there and rejected it. And it said, sure, these are not conflicting obligations. HHS can have one rule for the non-religious people and a rule for the people that have already won the RFRA case. Mr. Davis, are you aware of a case where we have held or other courts have held a district court abused its discretion based on facts or a law that developed after the district court's order? So, Your Honor, the Opium and Life Church case is about abusing its discretion in not entering an injunction for a meritorious reloop or RFRA claim. As far as your precise question, no, Your Honor, I'm not aware off the top of my head of a case like that. But I think it's important to note that the difference between the vacater that the district court gave us and the injunction that we're seeking here was obvious even before these events, these post-appeal events. Didn't Opium and Life, though, include events that occurred even on the very day before or the day of oral argument in that case? So it was, and doesn't the opinion discuss that? So it's not just events that were known at the time the district court entered, but did or didn't give the relief at the time? That's absolutely right, Judge Elrod. The night before oral argument, the government there had changed its rule. And this court, in a really important passage for this case, said, well, look, for irreparable harm purposes, when you're evaluating that in a RFRA or RELUPA case, the question is not what particular obstacle is it that the government has in place, the words on the page. It's the burden on religion. And there, it was the plaintiff's inability to occupy their property. Here, it's the requirement that these plaintiffs will be these penalties if they can't perform gender transitions and abortions because of their religious beliefs. I think the Opium and Life Church case is on all fours. Mr. Davis, is there, do we, I guess we should ask opposing counsel, is it a risk that these things are going to be required based upon the current state of the law in this understanding? Yes, Your Honor, and I would direct the court to the Religious Sisters of Mercy case a couple weeks ago, which plaintiffs identically situated to the plaintiffs here continue to face a credible threat of enforcement under current circumstances. But do these plaintiffs, you pointed out the uniqueness of these plaintiffs, do these plaintiffs, are they going to force these plaintiffs based upon the developments in the law? Your Honor, I think that's what the, I mean, these plaintiffs are similarly situated to other plaintiffs that have religious objections to performing gender transitions. But have they grandfathered them? Have they said, oh, we're not going after them and they have the right because of this lawsuit? No, Your Honor, and I think the fact that HHS is still fighting this appeal the way that they are suggests that they want to preserve their right to go after these plaintiffs. I see I'm out of time, Your Honor, so I'll reserve my time for rebuttal. Okay, thank you. We'll hear from opposing counsel now. Good afternoon, and may it please the court. Ashley Chung for the United States. Ms. Chung, does the government have any plans to be going after the plaintiffs in this case based upon the sex stereotyping or any other part of the 2016 rule at this time? Do they have to comply with the 2016 sex stereotyping provision, or are they grandfathered because of the relief that they obtained in the district court, such that it's not necessary to do any further relief? Sure, I have a few responses to that, Your Honor. So plaintiffs prevailed in district court, and the district court vacated all of the provisions that plaintiffs challenged in the 2016 rule. Plaintiffs didn't challenge the sex stereotyping provision, so that's not an issue in this case. And the injunctions from DDC and EDNY, those courts did not purport to revive the portions of the 2016 rule that were vacated by Judge O'Connor in this case. So all of the challenged provisions are gone. They've been vacated by the district court, formally rescinded by the agency, and replaced by a new rule. But I'm asking whether any portion of the 2016 rule, there's any intent by the government to use any portion of the 2016 rule against the specific plaintiffs in this case? Because they also sought an injunction against the entire rule. They also sought an injunction against the application of the statute. And it was news to, certainly news to the district judge, and probably to you and the plaintiffs, that the sex stereotyping provision could totally gut the relief that was given, but we learned that afterwards. So is there any current plan, or is there an assurance that you're not going to enforce the 2016 rule against these plaintiffs? I'm trying to figure out if there's a controversy here that needs to be remedied, and then we can talk about whether they're entitled to a remedy, but is there even a, are they already safe, or are they not safe under the 2016 rule? Sure. So there is no current case or controversy here, because the challenged provisions of the 2016 rule are gone, and they haven't been revived. But no, but it's not just the challenged provisions, as we've learned, it's the rest of the 2016 rule that is coming to play. And they were challenging the 2016 rule, and also the underlying definitions in the statute. Sure. So would you, is there a government assuring us that it would not try to use the sex stereotyping language and the arguments that the district court developed in that case against these particular plaintiffs, or are they at risk under the 2016 rule, as we sit here today? Plaintiffs haven't met their burden to show any risk of enforcement. To bring a pre-enforcement- Well, wouldn't you be able to tell us that they were not, that you're not going to enforce? No, Your Honor, it's not the government's burden to do so. Plaintiffs brought this appeal, and there's a very demanding standard to bring a pre-enforcement challenge. They have to show that there's a substantial threat of imminent harm of enforcement against them, and they can't show that here, where they prevailed in district court. And I do want to be clear about exactly what case plaintiffs brought in district court. At every step of the process, they have been challenging the 2016 rule and not the underlying statute. The underlying statute doesn't cause them any harm. And I'd like to point the court to a few specific examples. Can we go back a little bit, because I'm not quite understanding your answer. I thought the question that Judge Elrod was was pertinent to a case of controversy type inquiry, as opposed to a burden of proof. I think you've answered it by talking about the plaintiff's burden, but I understood the question. And frankly, I have the same question as to the case of controversy regarding the 2016 rule, which is something I asked opposing counsel right up front. So can you clarify the case of controversy question before we talk about the plaintiff's success and so forth? Sure. So there is no current case for controversy under the 2016 rule, because the portions of the 2016 rule from which plaintiffs claimed harm have been vacated by the district court and rescinded. And plaintiffs have never claimed harm from the sex stereotyping provision. So that provision is not even at issue in this case. And they haven't shown that the agency is going to bring any enforcement action against plaintiffs under that provision or under any part of the 2016 rule. Plaintiffs prevailed in district court on both their APA claim and their RFRA claim. And just turning back to exactly what is at issue in this case, I'd like to point to a few examples from plaintiff's complaint and from their district court brief to show that they were challenging the 2016 rule and not just a general application of the statute. So the first sentence of plaintiff's complaint says, this lawsuit challenges a new regulation issued by HHS, and that's the 2016 rule. In count one, paragraph 121, they say the regulation is not in accordance with section 1557 or title nine. In their prayer for relief, they asked the court to issue a permanent injunction enjoining defendants from enforcing the challenged regulation against plaintiff. And the same goes for all their district court briefs. So the point here is that plaintiffs challenged the 2016 rule and they won on that challenge. They can't use this appeal and a challenge to the 2016 rule to challenge different agency action, which they never raised in district court. Well, I guess it gets us back to the point. What does it mean to have won the challenge? Because the court explained that there was no indication that once the rule is vacated, defendants would defy the court's order and attempt to apply the rule against plaintiffs. Indeed, the defendants agreed with plaintiffs in the court that the rule was substantially unlawful under the APA. I'm quoting your red brief, but language specifically directly from the court. But now we know that the rule is not considered vacated. And in fact, another court has said that the sex stereotyping provision must be in effect and is enjoined from the court. And that provision does the exact same thing that the words that were vacated are marked out. So it's not correct technically that the rule itself is vacated. The rule is still in effect, at least in part. And it has the same substantive effect to harm the plaintiffs unless the defendants are acquiescing that the plaintiffs are not subject to that injunction in the Whitmer-Walker world. So the district courts in Walker and in Whitman-Walker both recognize that they did not have the power to revive portions of the rule that were vacated by district court in this case. But they vacated, they revived other portions that they said did this. One of the courts said did the exact same thing. So it was of no account. I don't think it's clear that that provision does the exact same thing. If it did, then plaintiffs should have challenged that provision in their case in district court. And they did not. Plaintiffs still aren't claiming harm from that provision. And the district court was well within its to craft appropriate relief in this case for the APA claim and the RFRA claim. Under RFRA, courts are supposed to award appropriate relief. And that doesn't always have to be an injunction. And I like to give two examples of cases in which there was a RFRA challenge and the courts said that an injunction wasn't the proper remedy. So the first is Tanvin versus Tanvir from the Supreme Court. It's 141 Supreme Court 486. And the Supreme Court explains that appropriate relief, that term is open ended on its face. And what relief is appropriate is inherently context dependent. And in that case, monetary damages for the appropriate relief in an individual capacity RFRA claim, not an injunction. And the second case is OA versus Trump, which was by the district court in this case. And the court said an injunction was not warranted, because that court had vacated the challenge role. And that's exactly the situation we're in here. Could you please let us know how you would distinguish the opulent lice language about the RFRA injunction, and also why it would be wrong to just remand and let the district court look at the situation in light of the developments? So I think a remand would be inappropriate in this case, because this case has already proceeded to final judgment. Plaintiffs won, and the district court rightly pointed out that if there's future agency action or different agency action that threatens imminent harm to plaintiffs, plaintiffs can come back to the courts, and they can seek relief at that point. But as this case stands, there's no current case or controversy over the rule that plaintiffs challenged. And the district court was in its broad discretion to do that. And I would like to address- Distinguish opulent lice? I'm sorry, are we having a hearing issue? No, I'm sorry. Distinguish opulent lice, if you wish. I'm asking you to do so, but if you don't care to, and you want to use your time, otherwise you may. Sorry, was there a specific portion of that case that you wanted me to address? Yes, it said that a RFRA injunction should be entered whenever RFRA is violated. That's the portion that I would like for you to address. Sure, but sometimes an injunction under RFRA is the appropriate relief for that case. But as the Supreme Court said in Tanzier, it's not always the appropriate relief. And here, it was well within the district court's discretion to conclude that by vacating the challenge provision of the rule, that sufficiently protected plaintiffs and that no further relief was warranted. I think the Supreme Court's decision in Monsanto is exactly on point here. In that case, the district court had vacated the challenged agency decision, and it had gone one step further and entered the type of injunction that plaintiffs are asking for here. And the Supreme Court said that second step, that injunction, was an abusive discretion because if there was future agency action that might harm plaintiffs, the appropriate thing to do would be for plaintiffs to bring a challenge to that action at that point, not for the district court to enter a preventative permanent injunction against future hypothetical agency action. We don't know if it's agency action or is it against the current rule, the 2016 rule, because nothing else, the agency doesn't need to do anything else except to apply the provisions of the 2016 rule that are still in effect. So two responses to that, Your Honor. First, there's no threat of enforcement, and plaintiffs haven't shown that the agency intends to bring enforcement action against them under the 2016 rule. You said two. You can give your second response, and then I think Judge Willett has a question for you as well. Or was it you or was it Judge Ingle? I think it was you, Judge Willett. Sure. Did you want to give your second reason? Yes. And second, plaintiffs can't challenge future agency action. There has to be some concrete case or controversy now. So to the extent that they think the agency is going to take different action in the future, they can bring that plan in the future. They can't get a permanent injunction now. Okay. I think Judge Willett has one question for you. I do. Thank you. Just really quick. It's about Whitman Walker. So the DC Circuit, we all know, just stayed the appeal from the preliminary injunction against the 2020 rule, and I think just awaiting possible reconsideration of the rule by the new administration. And I wanted the government's thoughts as to any implications of that. Should the agency's reconsideration of the 2020 rule inform how we view this case at all? Sure. So I think the fact that the agency is reconsidering the issues only underscores that there is no current case or controversy, and that plaintiffs are not harmed now by anything that the agency is currently doing or under the agency's current interpretation of the rule. And if the court has no further questions, we would ask the court to dismiss this appeal as moot or to affirm the judgment of the district court. Thank you. Thank you. We have your argument. Mr. Block. Good morning, Your Honors. Joshua Block for the intervener. I think today has blended together two very different questions, and I think it's important to keep them separate. The first is whether the plaintiffs are entitled to an injunction against the 2016 rule, and the second is whether they're entitled to an injunction that goes beyond the 2016 rule to cover hypothetical future agency regulations that haven't yet been promulgated. Now, the first question I think is actually a relatively low stakes question. As we see it, the district court issued a declaratory judgment. This is in its final judgment on Record Excerpt 41 declaring that the 2016 rule, as applied to the plaintiffs, violates RFRA. That is a binding judgment on the government. And so I think the issue for this first question is whether or not that declaratory judgment is enough or whether they need an injunction to. And as interveners, I don't, we don't really care as much about that, the answer to that question, because I think in either case, the only issue is whether the government is going to be under the court's power if they bring another action under the 2016 rule. But it's clear that the court has held the 2016 rule can't be applied against these defendants. And I think that's true. That's in total, right? That's in total, not just the, and that includes the sex stereotyping provision, because it's the entire rule. Is that your understanding? Yes, Your Honor, that is my understanding, that the APA challenge was to the specific provisions, but the RFRA challenge, I think, was to the entire rule. So you're agnostic on whether or not we need the, to clarify that. That's right. I don't, I don't think it was, I don't think it was an abuse of discretion. I think in general, the Supreme Court has said that when voluntary cessation happens, as it did with the Trump administration, that generally counsels in favor of a declaratory judgment and not an ask the court to remand. I, my understanding is that any application of the 2016 rule against these plaintiffs under the district court's holding violates RFRA. Okay. And now you're going to talk about the statute and the 2020 provision. Is that what, how you're going to break it up or whatever? No, Your Honor. So I, I, I think that the 2020 provision is, is a little bit irrelevant to this also. The, to the extent the 2020 provision revived anything about the 2016 provision, it can't be applied to these plaintiffs under RFRA. So I don't think it's the vacatur that protects plaintiffs. It's their declaratory judgment that this violates RFRA. And they're not similarly. The vacatur is not really strong enough, is it? I think it's a red herring. I think that it's the declaratory judgment that really provides them the protection and that's what distinguishes them from the sisters of mercy case. They brought a lawsuit. They didn't have a declaratory judgment already protecting them. But I think what is of great concern is the idea that they could leverage this holding against the 2016 rule to have an injunction that purports to enjoin application of regulations that haven't even been adopted yet. In their footnote, in footnote four of their reply, they even suggest HHS would have to effectively have pre-clearance for the district court before applying any sort of new regulation. And, you know, that might be efficient. It's always efficient to have advisory opinions, but article three courts can't do that. They just can't enjoin the application of future regulations that haven't been passed. It's just, you know, you challenge the regulation after it's passed, not while it's still being drafted. We have final agency action that limits this court's ability to appear sovereign immunity. So I think that is the fundamental divide here. And I think the statute though, because they did argue in the district court and they have submitted a proposed order that would have said what the statutory language meant. Your Honor, I think that's just wrong. The only mention of the statute is they mentioned that in their proposed order. I think they slipped it into their proposed order. It's nowhere in their complaint. It's nowhere in their legal briefing. It's nowhere in the district court's analysis. No, they represented, they were asking the district court to make its preliminary injunction permanent. It is complete, an underlying challenge to 1557's application. It's completely absent from anything except what they slipped into their proposed order. So that's not good enough. And so they really didn't bring a 1557 challenge that was overlooked. Okay. That's your position. Yes. Their whole theory of the case was that 1557 doesn't protect transgender people. That was their theory of the case. So it was all based on the idea that this rule doesn't validly apply to 1557 in the first place. So it would conflict with their underlying theory. If they want to challenge 1557 and there'd be an actual response to that challenge, hopefully by the government this time, then that is just a very separate case than this one. And I just do want to address a few other issues here. I think the difference from opulent life is that opulent life, as I understand it, turns on whether there was irreparable harm from a RFRA violation. I don't think there's any dispute. A RFRA violation is irreparable harm. I think an injunction isn't necessarily necessary here because they have a declaratory judgment to stop it already. Not that the harm, if it happened, wouldn't be irreparable. And I just wanted to emphasize that beyond, I think, the very weighty Article III questions here of having a broader injunction that goes beyond for regs that haven't been passed yet, this court has said time again that any injunction has to be narrowly tailored to the specific violation of the law that the court found. And plaintiffs here, they won a RFRA judgment on an expedited basis without any discovery, without any even lodging of the administrative record, because the district court was willing to sort of accept the government's default on this. I think that allowed a much quicker resolution than if the court had purported to issue a holding for all time that any application of RFRA couldn't survive any sort of, excuse me, any application of the rule could never survive any RFRA analysis, regardless what the evidence actually showed. The whole theory of the case was... on just whole swaths of regular, joining whole swaths of regulation and proposed regulation, and you're aware of that, right? Yes, Your Honor, and I guess that's why we have courts of appeals. All these decisions are in the past two years, and I think this would be the first court of appeals to ever bless that sort of injunction, and it's really unheard of. Thank you. I see my... I'm sorry, were you finished? I didn't mean to cut you off. I was. I'm happy to answer any further questions. I just saw that my time was up. Thank you. I don't think there are any further questions for you. We appreciate your argument. Mr. Davis, you may proceed with your rebuttal. Your Honor, just a few quick points in rebuttal. So first, we heard from both HHS and a rule and not a challenge to a statute, but Your Honor, again, in the injunction that we submitted, in the proposed injunction language that we submitted to the district court, which is the best place to look for the relief that we were asking the district court to give us, we specifically sought the very relief that we're seeking from this court. Isn't the best place to look could be your complaint, or maybe in your briefing. Also, I mean, did you bury that? And it's not really... wasn't front and center. It's not a criticism. It's just, can we be realistic about what did you really argue to the district court? Sure, Your Honors. And Your Honor, and just one thing to clarify, of course, there are two different main pieces to this case. There was an APA piece, which said this 2016 rule is inconsistent with the underlying statute. And that's, of course, what HHS was quoting when they talked about the complaint. There's a RFRA piece that's not about whether the rule is consistent with the It's a substantive claim. It's not a procedural claim. Can the government require plaintiffs to perform these procedures while holding these penalties under Section 1557 over their head? That claim assumes that the rule is consistent with the statute, and then ask, can the government do it? So this is contraceptive mandate land. This is exactly what the plaintiffs asked for in the contraceptive mandate case and what they got in at least 20 contraceptive mandate cases that we collected in our brief. I'd also direct the court, Your Honor, just in case the court still had there's a federal rule that's directly on point. That's Rule 54C. And it says the judge is supposed to, the district court is supposed to give the plaintiffs whatever relief they're entitled to as a matter of law, even if it's not in the complaint. I think our complaint makes it quite clear that we're challenging a burden with respect to our RFRA claim, not words on a page, but there's that rule to fall back on if the court needs to look to that. Mr. Davis, what threat of enforcement do your clients currently face? Your Honor, I think that's a key question. And the Religious Sisters of Mercy case goes a long way to addressing it. But to answer your question, under the speech first precedent from this court and under numerous pre-enforcement challenge cases like the Susan B. Anthony v. Street House case, the question is a credible threat of enforcement. And the speech first case points out that in the ordinary case, that credible threat of enforcement simply follows from the fact that the plaintiff's conduct is at least arguably prescribed by the challenge statute, as long as that statute is non-moribund. And of course, there's no claim that the statute here is moribund. But in terms of the actual facts on the ground, there's a credible threat of enforcement for several reasons. Tell me how uncertainty, tell me how possible harm equals irreparable harm. So, Your Honor, I think the possible harm, uncertainty, all of that sort of goes to, can the plaintiff bring this case at all in the first place? And that's what HHS has been arguing, that the appeal is moot. And we think it's simply very odd to say a claim is mooted by the 2020 rule when the 2020 rule has been enjoined, and the 2020 rule itself arguably imposes the same requirements on us. So that's the mootness question. But I think Opium at Life Church tells you that once you get over the justiciability hurdles, you get to the merits and you win your case, riffraff or lupa, you have shown irreparable harm. So I think it's And I'd also direct the court to the Diocese of Brooklyn opinion from the Supreme Court just a couple of months ago. And there, it was not a mootness case, it was an injunction case. The plaintiffs had been removed from the challenge requirements by the time the case got to the Supreme Court. And so the Supreme Court had to consider, should we still enter an injunction here? And the court did enter the injunction because it said the plaintiffs were under a continuing threat that the requirements could be reimposed on them. That's this case. And I want to, I want to be clear, your honor, practical one, you said that there were practical and you didn't get to those. Yes, your honor. So even aside from the point that a riffraff violation is irreparable harm here, there's a credible threat of enforcement for at least three reasons. The first is that back when the 2016 rule was originally passed, HHS vigorously enforced it, including by entertaining claims against Catholic hospitals, exactly like the plaintiffs in this case. Claims that were complaints that were brought by counsel for ACLU are by ACLU in this case. Second, and so there's, there's really no reason to think that HHS won't go back to doing what it did now that the 2016 rule is back in effect under Walker and under Whitman Walker. Second is even independent of the 2016 rule, plaintiffs around the country have brought lawsuits against healthcare providers, similarly situated to the plaintiffs in this case, under section 1557 itself, not under the 2016 rule. We can rattle off at least eight cases that are cited in the record below, or that are cited by justice Alito and his Bostock opinion. And those cases have been successful. They've either gotten to discovery or the plaintiffs have actually obtained injunctions under section 1557, not the 2016 rule. And the plaintiffs have been living under a sort of Damocles for at least four years. This is the third administration that this lawsuit has been pending against. And every day they're piling up potential new liability under the faults claims act as the North Dakota district court pointed out in its opinion of religious sisters of mercy a couple of weeks ago. So we'd ask the court. Go ahead and strap it up. I think your time is up. And we'd ask the court to reverse the district court's remedy determination in part and remain for entry of a permanent injunction. Thank you. Thank you. We appreciate all of council's arguments today. Thank you. They've been helpful. And we appreciate you appearing virtually for this oral argument so that we could accomplish it today. Thank you. Thank you, Your Honor. And we will continue to consider it. Thank you.